[No. 16513.    Department Two.    September 26, 1921.]

ELIZABETH M. BOUNDS, *Respondent,* v. MINNIE E. GAL-
BRAITH, *as Executrix of the Estate of Archie R.
Galbraith, Appellant.*[1]

HUSBAND AND WIFE (12)—DISABILITIES OF COVERTURE—DEBTS
CONTRACTED BY WIFE. Under Rem. Code, § 5927, imposing liability
upon a wife for her contracts to the same extent as if she were un-
married, she is liable upon her promise to pay a community debt.

FRAUDS, STATUTE OF (4)—PROMISE TO PAY DEBT—COLLATERAL OR
ORIGINAL PROMISE. In an action for services performed for de-
fendant and her deceased husband, an allegation of the complaint
that defendant "would pay and cause to be paid" the reasonable
value of the services to be rendered does not set up a collateral
promise but alleges a positive promise to pay, not the debt of an-
other, but her own debt.

APPEAL (454)—REVIEW—HARMLESS ERROR—FACTS OTHERWISE ES-
TABLISHED. Refusal to strike the testimony of plaintiff as to the
reasonable value of her own services is not prejudicial, where the
same value is elicited by the testimony of two competent witnesses.

Appeal from a judgment of the superior court for
Spokane county, Oswald, J., entered December 31,
1920, upon the verdict of a jury rendered in favor of
the plaintiff, in an action on contract.    Affirmed.

*F. E. Langford* and *Lucius G. Nash,* for appellant.

*John M. Gleeson* and *Corkery & Corkery,* for re-
spondent.

MITCHELL, J.—The respondent brought this action
to recover for personal services rendered to the appel-
lant from September 15, 1904, to November, 1916. The
trial resulted in a verdict and judgment for the
respondent in the sum of $4,290.30, against only
Minnie E. Galbraith individually, from which she has
appealed.

[1]Reported in 200 Pac. 1082.

8—117 WASH.

Appellant is the surviving wife of Archie R. Galbraith, deceased. Respondent is the daughter of Archie R. Galbraith, deceased, by a former wife. In her original complaint against the appellant as sole defendant, respondent alleged that, about September, 1904, "at the request of the defendant and Archie R. Galbraith," she worked upon their ranch, and continued to do so until about November 1, 1916, that the work consisted of cooking for the family and farm hands, housework, including washing and ironing, milking cows, feeding pigs and chickens, and work in the harvest fields, picking fruit, and aiding in clearing land; "that shortly after plaintiff began work, defendant and the deceased Galbraith promised the plaintiff if she would continue to work . . . that they would pay her well out of the proceeds of the sale of the ranch when such sale should be made, and that said ranch was sold for $25,000 in August, 1918;" that plaintiff has not been paid, and that $2 per day is reasonable for her services. By leave of court, the complaint was amended by making Mrs. Galbraith, in her capacity as executrix of her deceased husband's estate, an additional party defendant. In the amended complaint, after alleging as formerly that she worked for them at their request, and describing the work performed, she then alleged, among other things:

"That shortly after plaintiff began said work, and on or about the 15th day of September, 1904, in Spokane county, Washington, the defendant, Minnie E. Galbraith and her then husband, the said Archie R. Galbraith, deceased, entered into a contract and agreement with plaintiff by the terms and conditions of which the plaintiff was to do and perform and render services to them and to be paid for said work the reasonable value thereof; and at said time the said Minnie E. Galbraith, on her own behalf and in her own capacity as an individual and for the purpose of induc-

ing and persuading this claimant to enter into this agreement, promised and agreed that she, the said Minnie E. Galbraith, would individually pay and cause to be paid to this plaintiff the reasonable worth and value of the work and services to be rendered, which said payment was to be made at the time the said Minnie E. Galbraith and Archie R. Galbraith, deceased, should sell and convey, or dispose of their said ranch; and that on or about August 15th, 1918, said ranch was sold by said Galbraiths.''

While there is a conflict in the testimony, there is ample credible evidence to support all of the material allegations of the amended complaint that were controverted by the answer. Respondent testified, by questions and answers, as follows:

''Q. What, if any, conversation did you have with the defendant Mrs. Galbraith in the fall of 1904, the fall or summer of 1904, down on College avenue with regard to your going out on their ranch? A. She wanted me to go out and do the housework. Q. What did she say about pay? A. That I would get my money when the ranch was sold. Q. Did she say who would pay you? A. She would pay me. Q. You state to the jury whether or not you went out to the ranch pursuant to that conversation. A. I did.''

Furthermore, two other witnesses, wholly disinterested, testified that once to each of them during the twelve years, in the absence of the respondent, the appellant stated that she was paying wages to the respondent. The respondent testified, and was corroborated, to her performing the services and labor as alleged during the whole of the twelve years, and admittedly she had been paid nothing for her services, for the defense was that she was a member of the family, treated as such, and that all her services were gratuitous.

Assignments of error 1 and 5 are that the court should have sustained a demurrer to the complaint and

an objection to the introduction of evidence upon the ground that no cause of action was alleged. The contention is that the allegations show that the obligation charged was a community debt for which the wife is not individually liable. That rule does not apply in cases such as this. Section 5927, Rem. Code (P. C. § 1430), provides: "Contracts may be made by a wife, and liabilities incurred, and the same may be enforced by or against her to the same extent and in the same manner as if she were unmarried."

Assignments 2 and 3 are predicated on the refusal of the court to strike, and to sustain a demurrer to, the amended complaint. The argument is that, as the original complaint did not state a cause of action, there was nothing to amend. In our opinion, there is no merit in the point.

Assignment 4 is that appellant's motion for judgment on the pleadings should not have been denied. Because there was no denial of an alleged affirmative defense setting up the statute of frauds, it is argued that "the sole question involved in the motion under discussion is whether the promise, as alleged, is within the statute of frauds." That is, it is contended that the allegations in the amended complaint, viz.:

"And at said time the said Minnie E. Galbraith on her own behalf and in her own capacity as an individual, and for the purpose of inducing and persuading this claimant to enter into this agreement, promised and agreed that she, the said Minnie E. Galbraith, would pay and cause to be paid to this plaintiff the reasonable worth and value of the work and services to be rendered,"

is a collateral and not an original promise, particularly because of the words that she "would pay or cause to be paid." The language referred to is entitled to no construction inconsistent with the charge

that Mrs. Galbraith made a direct and positive contract and promise to pay, not the debt of another, but her own debt.

Assignment 6 is that the refusal to strike certain testimony of the respondent to the effect that Mrs. Galbraith, in the fall or summer of 1904, wanted her to go out to the farm and do housework, that she would pay when the farm was sold, and that she did go out to commence work in September, 1904, was prejudicial error. The argument is that the testimony is inconsistent with the allegation that, after she began work, the appellant and her then husband agreed to pay her for her services when they sold the ranch. The testimony moved against went in by questions and answers, without any objection on the part of the appellant; and furthermore, the terms and conditions of the agreement, as testified to and pursuant to which the services were rendered, were identical with the allegations of the complaint so far as Mrs. Galbraith is concerned.

Assignment 7 is that the court erred in denying a motion to strike the testimony of respondent regarding the reasonable value of her own services. Without setting out that which the record shows concerning her means of knowledge, and without discussing the competency of her testimony, we are convinced the motion to strike was properly denied. No prejudice could arise thereon anyway, for two disinterested qualified witnesses fixed the same value as that testified to by the respondent, which in the total exceeds the amount of the verdict and judgment.

Assignments 8 and 9 are that the court erred in denying appellant's motion that the action be dismissed as to her individually, after respondent had rested her case in chief, and upon the whole proof, in

refusing to instruct the jury to return a verdict for the appellant. Enough has been said already to show that the case was one for the jury.

Assignments 10 to 15, inclusive, rest upon the refusal of the court to give certain instructions requested in writing by the appellant. They are not set out in the brief. They have been examined, however, and found not to be applicable, with one exception, in this case. As to that one, it was given in substance and legal effect.

Assignments 16, 17 and 18 are that the court erred in certain instructions that were given. Examination and consideration of them show they were plainly correct, clear and to the point.

The contentions made in assignments 19, 20 and 21 that there should have been no denial of appellant's motion *n. o. v.*, that the motion for a new trial was improperly denied, and that entry of judgment upon the verdict was unwarranted, are, each and all, without merit and require no distinctive discussion.

Affirmed.

MAIN, BRIDGES, and TOLMAN, JJ., concur.